IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 19, 2003

## TRACY LEBRON VICK v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hamilton County**
**No. 232249    Douglas A. Meyer, Judge**

---

**No. E2002-01761-CCA-R3-PC**
**May 20, 2003**

---

The Appellant, Tracy Lebron Vick, appeals the Hamilton County Criminal Court's dismissal of his petition for post-conviction relief. Vick pled guilty to second-degree murder and received a forty-year sentence, as a range II multiple offender. On appeal, Vick challenges the validity of his guilty plea upon grounds of voluntariness and ineffective assistance of counsel. Following a review of the record, we affirm the judgment of the post-conviction court dismissing the petition.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Cynthia Lecroy-Schemel, Chattanooga, Tennessee, for the Appellant, Tracy Lebron Vick.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Elizabeth B. Marney, Assistant Attorney General; William H. Cox, III, District Attorney General; and Rodney C. Strong, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Factual Background**

The facts, as developed on direct appeal, established that:

The [Appellant] and two armed accomplices went to the home of the victim, Ms. Melva Moore, on September 20, 1996, to rob Moore's boyfriend. The [Appellant] went to the back door of Moore's home carrying a loaded .357 revolver with the hammer cocked. When the [Appellant] opened the door, he met Moore on her way outside. The [Appellant] pushed the door open with the gun and shot Moore in the chest. Moore staggered to the living room of the house where she was found dead. The [Appellant] claimed he did not intend to shoot Moore, but Moore slammed the

door on his arm and the gun went off. When he heard the shot, the [Appellant] ran. He was arrested six days later and charged with first degree [felony] murder.

*State v. Tracy Lebron Vick*, No. 03C01-9808-CC-00100 (Tenn. Crim. App. 1999), *perm. to appeal denied*, (Tenn. 2000). On December 4, 1997, pursuant to a negotiated plea agreement, the Appellant pled guilty to second degree murder. Following a sentencing hearing, the trial court sentenced the Appellant to forty years in prison, to be served consecutively to an outstanding ten-year sentence, which was being served on probation at the time of the homicide. The Appellant's sentence was affirmed on direct appeal. *See id.*

Subsequently, the Appellant filed a petition for post-conviction relief, alleging that:

The trial court erred in finding that [the Appellant] received the effective assistance of counsel where counsel persuaded [the Appellant] to plead guilty to avoid the death penalty when in fact he was not even facing the death penalty, and where counsel poorly assessed [the Appellant's] likely sentence where there was no agreement as to same.

Following an evidentiary hearing, the post-conviction court dismissed the petition, finding that the Appellant had not met his burden of proof. It is from this ruling that the Appellant now appeals.

## ANALYSIS

In order to succeed on a post-conviction claim, the Appellant bears the burden of showing by clear and convincing evidence, the allegations set forth in his petition. Tenn. Code Ann. § 40-30-210(f) (1997). The Appellant's claim of ineffectiveness of counsel and involuntariness of his guilty plea, as set forth in his petition, stem from the following allegations:

(1) Based on representations by counsel, [he] believed the death penalty to be a genuine possibility if he proceeded to trial and was convicted of felony murder. He pled guilty based on his fear of the death penalty and would have pled guilty out of fear even if he had not committed the crime; [and]

(2) Counsel was further ineffective in assuring [him] he would not receive the maximum sentence if he pled guilty and accepted responsibility because his prior offenses were non-violent and in assuring him his sentence would be ordered concurrent to his revocation.[1]

---

[1]As noted by the post-conviction court, there was a variance between the issues raised in the Appellant's post-conviction petition and the Appellant's testimony at the post-conviction hearing. In his petition, the Appellant alleged that (1) his guilty plea was without a factual basis, and (2) trial counsel failed to advise him of the sentence enhancement potential of his prior convictions and his ineligibility for sentence reduction credits. The State did not object to the variance and, therefore, any issue in this regard has been waived.

In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court held, "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed, a "court charged with determining whether . . . pleas were 'voluntary' and 'intelligent' must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56,106 S. Ct. 366, 369 (1985) (citing *North Carolina v. Alford*, 400 U.S. at 31, 91 S. Ct. at 164).

To succeed in a challenge for ineffective assistance of counsel, the Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the Appellant must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland*, the Appellant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59, 106 S. Ct. at 370; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)); *see also Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, *conclusions of law* are reviewed under a purely *de novo* standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

## I. Intimidation by Trial Counsel

In the present case, the Appellant first contends that his plea was involuntarily entered because his trial counsel coerced him into pleading guilty. Specifically, the Appellant contends that

trial counsel coerced him into pleading guilty by telling him that "he needed to plead guilty because the District Attorney was talking about the death penalty."  Although the record indicates the State may have briefly considered the death penalty as a possible option, the district attorney general never filed notice to seek this option.  After review, the post-conviction court found the Appellant's plea to be voluntary and explained its reasoning as follows:

> In the petitioner's case, none of the relevant circumstances attending the entry of his plea suggest that the plea was involuntary or unintelligent.  The petitioner does not complain that lack of intelligence, lack of familiarity with criminal proceedings, or lack of access to counsel was a factor in his plea, and lack of competence on the part of counsel is inconsistent with the Court's findings. . . .  In addition, the petitioner had advice from counsel and the court regarding the charge(s) against him, lesser, included offenses, and penalties. . . .  Considering the petitioner's acknowledgments in his petition to enter a guilty plea and at the submission hearing that his maximum sentence exposure on the charge of felony murder was life imprisonment and his representation at the submission hearing that no one had pressured, threatened, or forced him, the Court finds that the petitioner's plea was voluntary and intelligent.

The record of the guilty plea hearing indicates that the trial court questioned the Appellant extensively as to whether his plea was made with knowledge and understanding.  This is evidenced by the following colloquy between the trial court and the Appellant:

> THE COURT: Did your attorney explain to you the minimum and maximum sentence you would have been facing had you gone to trial?  The minimum sentence for murder in the first degree and the maximum that you would have been facing would be life imprisonment; do you understand that?

> THE WITNESS: Yes, sir.

> THE COURT: And that would have been a total of fifty-one years before you'd be eligible for parole; do you understand that?

> THE WITNESS: Yes, sir.

> THE COURT: You could also be, possibly – when this case went to trial, the court would instruct the jury on lesser charges: One of them would be second degree murder, the penalty for that is fifteen to sixty years; another charge would be possibly voluntary manslaughter, the penalty for that would be three to fifteen; another charge would be reckless homicide, the penalty would be two to twelve; and criminally negligent homicide, and the penalty would be one to six.  Do you understand those things?

THE WITNESS: Yes, sir.

At the post-conviction hearing, trial counsel testified that:

> [A]fter I reviewed the State's file, there was some notes in there about discussion of possibly pursuing [the death penalty], and that's what I told Mr. Vick. I was clear about it. They've got these notes in the file, they're considering this, we don't know if anything will come of it or not. Nothing ever did come of it, and he knew that nothing came of it. . . .

The post-conviction court obviously credited the testimony of trial counsel that he did not overreach or place undue influence upon the Appellant in order to get him to plead guilty. Because we do not revisit the issue of credibility on appeal, we defer to the post-conviction court's ruling in that regard. *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Moreover, we observe that trial counsel testified that he thoroughly reviewed all aspects of the case with the Appellant on numerous occasions throughout the course of his representation. Additionally, the Appellant testified that no one scared him or forced him into pleading guilty and, therefore, maintained that his guilty pleas were freely and voluntarily entered. We conclude that the record fully supports the finding of the post-conviction court that the Appellant has not proven by clear and convincing evidence that he was incorrectly advised as to the possible punishment for the felony murder offense. *See Deborah Louise Reese v. State*, No. M2000-02553-CCA-R3-PC (Tenn. Crim. App. at Nashville, Aug. 30, 2001); *Davidson v. State*, No. W1999-00080-CCA-R3-PC, (Tenn. Crim. App. at Jackson, May 16, 2000), *perm. to appeal denied*, (Tenn. 2000); *Tate v. State*, No. 02C01-9810-CR-00304 (Tenn. Crim. App. at Jackson, Aug. 12, 1999). A guilty plea motivated by a desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law is not invalid under the Fifth Amendment. *Brady v. United States*, 397 U.S. 742, 751, 90 S. Ct. 1463, 1470 (1970). Therefore, this issue is without merit.

## II. Sentencing Information

Next, the Appellant argues that his plea was involuntary because trial counsel "told him he would not receive the maximum sentence if he accepted responsibility and pled guilty because his prior offenses were non-violent drug and theft offenses. He also assured him his sentence would run concurrent to his revocation which did not happen." At the guilty plea hearing, the trial court advised the Appellant as follows:

> THE COURT: You understand that what you're pleading to is second degree murder? The sentence that the state is recommending is between twenty-five and forty years, you'll have a sentencing hearing on February the 6th?
>
> THE WITNESS: Yes, sir.

THE COURT: You'll be facing a sentence of anywhere from twenty-five to forty years as a Range II multiple offender. That means whatever sentence you get will be served at thirty-five percent, which is what the law says. However, there's an amendment to that that says you'll have to serve eighty-five percent of that sentence before you're release-eligibility date; do you understand that?

THE WITNESS: Yes, sir. . . .

[THE STATE]: Your Honor, I would state that he should be aware that the state has made no agreement as to whether or not this time would run concurrent or consecutive to his time for which he has a probation revocation pending.

THE COURT: All right. Do you understand that too? That that is a possibility, that this sentence, whatever you get on this case, could run consecutive to the revocation that you have; do you understand that?

THE WITNESS: Yes, sir.

Trial counsel did not testify regarding this matter at the post-conviction hearing. "[T]he decision to plead guilty is often heavily influenced by the defendant's appraisal of the prosecution's case against him and the likelihood of securing leniency through a plea bargain. . . . But, the mere existence of such an inducement to plead guilty does not constitute grounds for invalidating" a guilty plea. *Blankenship*, 858 S.W.2d at 904 (citation omitted). Concerning the imposition of consecutive sentences, as noted by the post-conviction court, "[r]egardless of the [Appellant's] plea, a consecutive sentence was a possibility, a possibility of which the [Appellant] was aware at the time of his plea, as his acknowledgment indicates." Furthermore, "the likelihood of a consecutive sentence was, in effect, as independent of the [Appellant's] pleas as was the possibility of a [concurrent] sentence, from which it follows that neither was a reason for the [Appellant] to reject the state's offer." Because it is commonly known that a criminal conviction qualifies as a ground for parole or probation revocation, which, in turn, requires a consecutive sentence, the ensuing guilty plea under these circumstances is knowingly and voluntarily entered. *Charlton v. State,* 987 S.W.2d 862, 864 (Tenn. Crim. App. 1998) (citing *Bailey v. State*, 924 S.W.2d 918 (Tenn. Crim. App. 1995). The Appellant certainly has provided no evidence that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." The record establishes that the Appellant's plea of guilty was entered voluntarily and knowingly and with full awareness of his sentencing range and the possibility of consecutive sentencing. *See State v. David Thomas Barron*, No. W1999-01134-CCA-R3-PC (Tenn. Crim. App. at Jackson, June 30, 2000). Therefore, this issue likewise is without merit.

## CONCLUSION

Based upon the foregoing, we find that the post-conviction court did not err in ruling that the Appellant's plea was knowingly, intelligently, and voluntarily entered or that he received the effective assistance of counsel. Accordingly, the judgment of the post-conviction court is affirmed

_____
DAVID G. HAYES, JUDGE